*659 Doctoroff, J.
(concurring in part and dissenting in part). I concur with the majority opinion with respect to the resolution of defendant’s cross appeal, and the conclusion that defendant’s motion to quash regarding the charges of first-degree murder and assault with intent to commit murder was properly denied. However, I disagree with the majority with respect to whether the trial court erred in concluding that defendant did not knowingly and intelligently waive his rights under Miranda v Arizona, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).
When reviewing a trial court’s decision with respect to whether a defendant voluntarily, knowingly, and intelligently waived his Miranda rights, this Court must review the entire record de novo, but will not disturb the trial court’s factual findings unless they are clearly erroneous. People v Sexton, 458 Mich 43, 68; 580 NW2d 404 (1998); People v Cheatham, 453 Mich 1, 30; 551 NW2d 355 (1996) (Boyle, J). Clear error will not be found where this Court merely disagrees with the result reached by the factfinder, but exists only where “the reviewing court is left with a definite and firm conviction that a mistake has been made.” People v Lombardo, 216 Mich App 500, 504; 549 NW2d 596 (1996). Furthermore, because credibility is crucial to a determination of a defendant’s level of comprehension and the trial judge is in the best position to make a credibility assessment, we must give deference to the trial court’s findings with respect to whether a waiver was knowing and intelligent. Cheatham, supra at 29-30.
On the basis of the entire record before this Court, I cannot conclude that the trial court clearly erred in finding that defendant did not knowingly and intelli *660 gently waive his Miranda rights. At the Walker hearing, defendant gave the following testimony regarding his understanding of the Miranda rights:
Defense Counsel: Okay. Let’s go over each one individually. You have the right to remain silent. Nate, do you know what that means?
Defendant: Can’t go nowhere.
Defense Counsel: You can’t go nowhere. Okay. Number 2— anything you say can and will be used against you in a court of law. Do you know what that means?
Defendant: If you say something, you go to court for it.
Defense Counsel: If you say something, you go to court for it. Number 3—you have a right to talk to [a] lawyer before answering any questions, and you have [a] right to have a lawyer present with you while you are answering any questions. You know what that means?
Defendant: Not really.
Defense Counsel: Number 4—if you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning if you wish one. Do you know what that means?
Defendant: If we don’t got no money, the Court give me one.
Defense Counsel: Okay. Number five. You have the right to decide at any time before or during questioning to use your right to remain silent, and your right to talk with a lawyer while you are being questioned. Do you know what that means?
Defendant: That—that when the police talk to me that I can talk to my lawyer with the police.
Although defendant’s testimony indicates that he had a limited understanding of his right to have a lawyer appointed to represent him if he could not afford to hire one, his right to have a lawyer present during questioning, and the fact that anything he said to the police could be used against him, it also indicated *661 that he did not understand his right to remain silent, his right to use his right to remain silent at any time before or during questioning, or his right to talk to a lawyer before answering any questions. The majority asserts that defendant’s understanding of his right to remain silent is evidenced by his testimony during the Walker hearing that he knew that he had the right to stop the interrogation. However, when viewed in context, defendant’s testimony indicated that he knew that he could stop the interrogation to speak to a lawyer or to his mother, not that he understood that he need not say anything at all.
At best, isolated portions of defendant’s responses at the Walker hearing indicated that he had a limited understanding of certain rights read to him. However, when viewed as a whole, defendant’s testimony during the Walker hearing did not evidence a clear understanding of the Miranda rights. As already stated, this Court must give deference to the trial court’s findings with respect to whether a waiver was knowing and intelligent. Cheatham, supra at 29-30.1 see nothing in the transcript of the Walker hearing to justify the majority’s conclusion that the trial court’s finding that defendant did not knowingly and intelligently waive his Miranda rights amounted to clear error.
Furthermore, I disagree with the majority’s contention that the trial court weighed too heavily defendant’s intellectual and emotional development. The psychological reports[1] indicated that defendant was functioning intellectually at the borderline level and *662 that defendant was behind his peers with respect to expressive language skills, abstract verbal reasoning, and practical problem-solving skills. Specifically, Dr. Stack noted:
[Defendant’s] abstract verbal reasoning ability and short-term auditory memory are at the level of a 6 year old, and his expressive language skills, practical problem-solving skills and fund of general information are at the level of an 8 year old. Some of his difficulty may be related to inconsistency in taking in verbal information.
The skills discussed in the psychological reports were relevant to determining defendant’s capacity to understand, and to knowingly and intelligently waive, his Miranda rights. When interpreting defendant’s responses during the Walker hearing, some regard must be given to the fact that defendant was an eleven-year-old child with the mental acuity of a Six-to eight-year-old child. The fact that defendant was able to give simplistic responses when asked the meaning of certain Miranda rights should not be taken to mean that his understanding of the rights was similar to that of an adult or older juvenile or was sufficient to allow him to knowingly and intelligently waive the rights. I further disagree with the majority’s contention that the fact that defendant was able to break into a house, steal a rifle, and shoot the rifle somehow translates into evidence that defendant sufficiently understood his Miranda rights to the extent that he was able to knowingly and intelligently waive those rights or minimizes the importance of considering defendant’s mental impairments when determining whether he knowingly and intelligently waived his Miranda rights. It was appropriate for the court to consider defendant’s intellectual and emo *663 tional development as part of the totality of the circumstances surrounding the interrogation, Cheatham, supra at 43, and I see no indication in the trial court’s decision that the court gave inappropriate weight to those factors.
The majority also opines that the trial court improperly emphasized the fact that the police did not tell defendant or his mother that they were investigating a murder before defendant and his mother agreed to waive the Miranda rights, but only told them that they were investigating an incident involving a gun. I agree that whether a suspect is aware of all possible subjects of questioning before an interrogation is not relevant to determining whether the suspect validly waived his Miranda rights. Colorado v Spring, 479 US 564, 577; 107 S Ct 851; 93 L Ed 2d 954 (1987). However, even without considering the fact that the police did not inform defendant and his mother that they were investigating a murder, the prosecution failed to meet its burden of proving by a preponderance of the evidence that defendant knowingly and intelligently waived his Miranda rights.
In summary, on the basis of my review of the record regarding the totality of the circumstances surrounding defendant’s confession, I cannot conclude that the trial court’s finding that defendant did not knowingly and intelligently waive his Miranda rights amounted to clear error. At the time of the police questioning, defendant was an eleven-year-old boy who was described in a psychological report as emotionally immature and whose intellectual functioning was well below the average for his age group. In fact, with respect to certain skills relevant to determining whether defendant had the capacity to understand the *664 Miranda warnings, defendant was functioning at the level of a six-to eight-year-old child. There was no evidence that defendant had any prior formal court involvement or that he had any prior exposure to the Miranda warnings before being questioned by the police in the instant case. While defendant was able to articulate a simplistic understanding of the meaning of certain Miranda rights during the Walker hearing, he appeared confused with respect to the meaning of other rights. As previously noted, a determination whether an accused knowingly and intelligently waived his Miranda rights depends in large part on the accused’s credibility. Cheatham, supra at 30. Here, the trial court, which had the opportunity to observe defendant’s demeanor, stated that it was “clearly satisfied that [defendant] did not understand his Miranda warnings.” From the record before this Court, I cannot conclude that the trial court’s finding was clearly erroneous.
Accordingly, I would affirm the trial court’s order granting defendant’s motion to suppress his statements to the police and any evidence resulting therefrom.

 The psychological evaluations were not conducted for the purpose of determining whether defendant validly waived his Miranda rights, but were conducted for the purpose of assessing his degree of criminal responsibility and competency to stand trial.